UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DIXON,

    Plaintiff,

v.

        Case No. 1:07-cv-640
        Hon. Robert J. Jonker

KENT COUNTY CORRECTIONAL
FACILITY and PRISONER
HEALTH SERVICES,

    Defendants.
    _____/

**REPORT AND RECOMMENDATION**

Plaintiff brought this action for injuries allegedly sustained while incarcerated at the Kent County Correctional Facility. This matter is now before the court on defendant Prisoner Health Services' motion to dismiss (docket no. 10).

**I.    Plaintiff's Claims**

Plaintiff's complaint sets forth the following allegations. On September 13, 2006, plaintiff was incarcerated at the Kent County Correctional Facility. While plaintiff was reading a book in the lower bunk of the cell, his 300-pound "bunkie" climbed into the top bunk, causing it to collapse on plaintiff. Compl. at ¶ IV. Plaintiff sustained injuries to his head, neck and shoulders. *Id.* After approximately 20 minutes, he was seen by a nurse as he was lying in his cell. *Id.* The nurse gave him five packs of ibuprofen. *Id.* The nurse did not call him out of his cell for an examination at that time. *Id.* At 1:30 a.m. the next morning, a nurse brought him additional ibuprofen. *Id.* Plaintiff states that he "wrote many kites" stating that he was having severe migraine

headaches, dizzy spells and blackouts. *Id.* On September 16, 2006, he was put in "the hole," and it took one week for a doctor to examine him. *Id.*

Plaintiff has incorporated into his complaint copies of several responses from the "The Medical Health Services Unit" to his medical kites. The dates and contents of the responses are listed below:

September 20, 2006:   You are on the Doctor's sick call list. Please be patient -- many inmates with many problems.

October 3, 2006:   Dr has ordered you special x-rays -- Please be patient while this procedure is being set up. Plus you are on a new pain med.

October 24, 2006:   Mr. Dixon - you have seen the Dr 5 times since 9-15-06[.] You have had neck, back & shoulder x rays. It has been determined that you <u>do not</u> need a CT scan or further testing. Your problems are muscular and that is why the Dr put you back on Flexeril just 5 days ago when you last saw him. [Emphasis in original.]

October 30, 2006:   You have been seen by our Doctors 7 times in less than 1 month. We've done x-rays that are normal. Per what the Doctors see [sic] -- you have been placed on Tylenol 2 times a day for next 10 days.

November 1, 2006:   Again, all your tests have been normal - I did put you on Dr. sick call list 10-22-06. Please be patient.

November 13, 2006:   You are on the Dr. sick call list since 11-6-06 -- have [sic] seen 11 times by the Doctors. So you must be patient -- some inmate's have not been seen yet. Also you are on medicine the Doctors feel is appropriate for your problem. -- All the tests the Dr's have done were normal.

November 15, 2006:   You are on the Doctor's sick call -- No more we can do -- But if you continue to deluge medical with your daily+ kites -- we will take other action.

November 27, 2006:   Mr. Dixon -- xrays are all fine. There is no need for a cat scan. You have been seen 1-2x weekly past few months. Your are on pain & muscle relaxant meds.

| | |
|---|---|
| November 28, 2006: | Again your x-rays are negative for any injury or abnormality. You have seen the Doctor every week your are on 2 pain meds. You need to give these meds time to work & get a blood level developed. |
| December 14, 2006: | You are on the list to see the physician. There may be a charge for this visit (see Inmate Handbook). |
| January 8, 2007: | You are on the list to see the physician. There may be a charge for this visit (see Inmate Handbook). |
| January 17, 2007: | $10.00 has been refunded to your account. Thanks. |
| April 5, 2007: | You are on the Doctor's sick call list -- Please be patient you have money in your account buy some Motrin. |
| April 23, 2007: | Your $2.00 has been refunded. |
| May 9, 2007: | You are on the <u>list</u> to see the physician. There may be a charge for this visit (see Inmate Handbook). [Emphasis in original.] |

> You may purchase the following items from commissary:
> <u>x</u>   Non-Aspirin (Tylenol-like)
> <u>x</u>   Ibuprofen (Advil-like)

*See* Compl. It is readily apparent from these responses that plaintiff saw medical personnel on a number of occasions not listed here. *See, e.g.,* the item dated October 24, 2006.

Plaintiff allegedly sent a number of letters, which he styled as "grievances" related to his injury. Some of these grievances are attached to the complaint.[1] The first grievance, dated March 7, 2007, complained about a lack of proper medical attention. In a response dated March 16, 2007, the Kent County Sheriff's Department ("Sheriff's Department") denied a grievance, noting that plaintiff had been seen by a nurse or doctor 26 times since the September 13, 2006 incident, that x-rays were taken, his condition diagnosed, and medications prescribed and delivered to him.

---

[1]There is no indication that these are copies of the actual grievances sent; plaintiff has simply attached handwritten notes to his complaint.

Plaintiff filed a second grievance on March 29, 2007, stating that he wanted medical treatment. The Sheriff's Department denied this grievance, noting that the medical department responded appropriately. Plaintiff has attached letters identified as two other grievances, dated April 20 and 30, 2007, stating that he wants medical attention for his pain. There are no responses to these grievances. Plaintiff attached a response from the Sheriff's Department, dated May 8, 2007, which reference denied a grievance dated May 4, 2007. This response notes that the last correspondence received from plaintiff was dated April 6th.

Plaintiff filed the present action on July 6, 2007. In his complaint, plaintiff states that his case consists of: bodily injury; mental anguish; migraine headaches frequently; continuous pain; blackouts frequently; medical malpractice; "lack of policy - procedures"; faulty construction; "quality of life broken"; and negligence. *Id.* Plaintiff seeks $2.5 million for compensatory damages and punitive damages "do [sic] to negligence and faulty construction." *Id.* at ¶ V.

## II. Discussion

Plaintiff's complaint does not identify any federal statute or federal constitutional right upon which he bases any claim. Nevertheless, the Clerk's office categorized plaintiff's complaint as a prisoner civil rights action. After initial review of the complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. § 1997e(c), the court ordered the Clerk to arrange for service of the summons and complaint. *See* docket no. 4.

Defendant seeks to dismiss plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.

2007) (citations omitted). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir.2005). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The Court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin American Citizens*, 500 F.3d at 527 (citations omitted). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, the plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels, conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S.Ct. 1955, 1965 (2007).

In determining whether a complaint states a cause of action, pro se litigants, such as plaintiff, "are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a pro se complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, the duty to be "less stringent" with pro se complaints does not require this court to conjure up unpleaded allegations. *Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434, 437 (6th Cir. l988); *McDonald v. Hall*, 610 F.2d 16 (lst Cir. l979).

Here, the court concludes that plaintiff's only conceivable federal cause of action is a prisoner civil rights claim alleging that defendants acted with deliberate indifference to his serious

medical needs. Prisoner civil rights claims are brought pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). "[T]o state a claim under section 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the 'Constitution and laws' of the United States, and (2) plaintiff must show that the defendant deprived him of this federal right 'under color of law.'" *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988).

As an initial matter, plaintiff does not allege whether he was an inmate or a pretrial detainee at the time of the alleged incidents. It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). Although the Eighth Amendment applies specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005). Thus, the federal constitution would protect plaintiff from defendants' deliberate indifference to his serious medical needs, regardless of whether he was an inmate or a pretrial detainee.

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to

establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Hudson*, 503 U.S. at 8-9.  With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Id.* at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Assuming that plaintiff is proceeding under either the Eighth or Fourteenth Amendments, he has not alleged acts rising to the level of a federal constitutional violation.  First, the exhibits incorporated into plaintiff's complaint indicate that he received significant medical treatment for his injury and that the jail's health care providers responded to plaintiff's numerous

7

requests for medical treatment.² This treatment and monitoring of plaintiff's medical condition, which included neck, back and shoulder x-rays, as well as pain medication for an apparent diagnosis of muscular problems, does not demonstrate the type of wanton disregard for plaintiff's serious medical needs sufficient to establish deliberate indifference.

Second, the acts alleged in plaintiff's complaint describe a variety of state law torts including "negligence," "medical malpractice" and "faulty construction." Even if defendants were negligent in their treatment and committed medical malpractice, mere negligence in diagnosing or treating a medical condition does not give rise to a constitutional violation. *Farmer*, 511 U.S. at 835. "Medical malpractice does not become a constitutional violation merely because the victim is [detained by the state]. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

Third, the gist of plaintiff's complaint is that he disagreed with the course of treatment prescribed by the jail's health care providers. Plaintiff's apparent disagreement with the health care providers regarding his diagnosis and treatment does not rise to the level of a federal constitutional violation. *See Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Smith v. Sator*, 102 Fed.Appx. 907, 909 (6th Cir. 2004) ("differences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim") (*citing Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.

---

² *See* Fed. R. Civ. P. 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

8

1976));  *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (a prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim).

In summary, plaintiff has failed to allege acts or omissions sufficient to establish a federal constitutional claim. For these same reasons, defendant's motion to dismiss should be granted.

### III.     State law claims

The remainder of plaintiff's claims against both defendants involve alleged violations of Michigan state law. Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court exercised its supplemental jurisdiction over plaintiff's state law claims because those claims appeared to be intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claim against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against this defendant. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).

As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the Court has rejected

plaintiff's federal claims. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims. Accordingly, the court should dismiss the plaintiff's remaining state law claims asserted against defendants.

### IV. Recommendation

Accordingly, I respectfully recommend that defendant's motion to dismiss (docket no. 16) be **GRANTED** and that this action be **DISMISSED**.

Dated:  June 24, 2008                                  /s/ Hugh W. Brenneman, Jr.
                                                       HUGH W. BRENNEMAN, JR.
                                                       United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).